# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIVEMEPOWER CORPORATION, | CASE NO. 07cv157 WQH(RBB) |
| Plaintiff, | **ORDER** |
| vs. | (Doc. # 5) |
| PACE COMPUMETRICS, INC.; TERRY RESNICK; JODY RESNICK; RONALD S. BERG; and RANDOLPH WILLIS, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is Plaintiff's "Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue" ("Application for TRO"). (Doc. # 5.)

## I. Background

On January 25, 2007, Plaintiff filed its original Complaint against Defendant Pace Compumetrics, Inc. ("Pace"), alleging that the parties entered into a professional services agreement on December 13, 2006, whereby Pace engaged Plaintiff to provide drawings for buildings generated from Plaintiff's proprietary computer aided design and drafting ("CAD") software. Plaintiff alleged that as soon as Pace gained access to Plaintiff's software and contractor list, Pace solicited and hired contractors who were trained by and under contract with Plaintiff, terminated the agreement with Plaintiff, and continued using Plaintiff's CAD

software. The original Complaint alleged the following causes of action: (1) copyright infringement; (2) breach of licensing agreement; (3) conversion; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) interference with advantageous business relations; (7) fraudulent inducement; and (8) unfair competition (Cal. Bus. & Prof. Code §§ 17200, *et seq.*). The original Complaint's "Prayer for Relief" states in full:

> Based on the foregoing, Plaintiff prays for money damages in an amount to be proven at trial and such other further relief as to this Court may be just, fair and equitable including, but not limited to pre and post-judgment interest and Plaintiff's costs of suit including reasonable attorney's fees incurred in connection with prosecuting this action.

(Compl. at 10.)

On March 14, 2007, Pace filed a Motion to Dismiss, seeking the dismissal of the following causes of action: copyright infringement; breach of the implied covenant of good faith and fair dealing; interference with advantageous business relations; and unfair competition. (Doc. # 3.)

On March 16, 2007, Plaintiff filed its Application for TRO and "Verified First Amended Complaint" ("FAC"). (Doc. # 4 & 5.) The FAC again names Pace as a Defendant, but also adds four individuals as Defendants: Terry Resnick, CEO of Pace; Jody Resnick, President of Pace; Ronald S. Berg, Pace's attorney; and Randolph Willis, Senior Project Engineer for Pace. (FAC ¶¶ 3-6.) The factual allegations in the FAC are essentially the same as those in the original Complaint, although the FAC is more detailed, and the various agreements at issue are attached, and the FAC is verified by William Walton, the President and CEO of Plaintiff.

**A.   Allegations of the FAC**

On December 13, 2006, Pace retained Plaintiff on a project (the "BAM project") to provide building floor plan drawings in CAD format (known as "Building Surveys") for 1,016 Bank of America building sites in Texas, Georgia, Tennessee, North Carolina, South Carolina and Kentucky, pursuant to a written "Agreement for Professional Services" ("Pace

Agreement"). (FAC ¶¶ 12-13, Ex. 1.)[1] On January 1, 2007, the Pace Agreement was expanded to include an additional 640 building sites in Florida. (FAC ¶ 12.) In consideration for its services, Pace promised to pay Plaintiff approximately $1.337 million. (FAC ¶ 13.)

The Pace Agreement provides, in part, that "Pace reserves the right to terminate this Agreement at any time upon fourteen (14) day written notice to Consultant [i.e., Plaintiff], even though Consultant is not in default." (FAC, Ex. 1 § 17.) The Pace Agreement further provides:

> B. While this Agreement is in effect, and for a period of six (6) months following termination of this Agreement for any reason, both parties agree that they shall not hire, solicit, approach or encourage for the purpose of employing or engaging any of the other party's employees, consultants, contractors or subcontractors, without first obtaining the prior written consent of the other party.
> C. Pace expressly agrees that notwithstanding any other provision of this Agreement, in the event of Pace's breach of Section 18(B) above, Consultant shall be entitled to injunctive and/or equitable relief, such relief to include monetary payment by Pace to Consultant equal to any and all amounts that Consultant would otherwise have been entitled to if Pace had not breached Section 18(B) above.
> Sections 18(B) and 18(C) shall survive termination of this Agreement.

(FAC, Ex. 1 § 18.) The Pace Agreement provides that it shall be governed and interpreted by California law. (FAC, Ex. 1 § 24.)

In preparation for deployment pursuant to the Pace Agreement, Plaintiff assembled a team of building surveyors from its proprietary database of prospective field technicians, and executed Independent Contractor Agreements with the BAM Project team members in December 2006. (FAC ¶ 17.) Plaintiff paid for the relocation, training and equipping of these team members during December 2006 and early January 2007, in preparation for the January 8, 2007 deployment of the team. (FAC ¶ 17.) Each of the Building Surveyors retained by Plaintiff for the BAM Project entered into Non-Disclosure Agreements and Independent Contractor Agreements with provisions intended to protect Plaintiff's proprietary information and business relationships and to provide for injunctive relief in the event of breach. (FAC ¶ 22, Exs. 3-6.)

---

[1] The copy of the Pace Agreement which is attached as Exhibit 1 to the FAC is unsigned. However, Pace concedes that this document is an accurate copy of its contract with Plaintiff.

Beginning in December 2006, and continuing to January 18, 2007, Plaintiff provided Defendants Jody Resnick and Terry Resnick with Plaintiff's proprietary database of existing and prospective field technicians and confidential business plans and processes developed by Plaintiff for the BAM Project. (FAC ¶ 25.) Plaintiff also paid for its business affiliate, Michael Axon, to fly to Houston from England to provide expert training on the use of Plaintiff's PowerCAD software to Pace representatives and to Plaintiff's BAM Project team. (FAC ¶ 26.)

On January 9, 2007, one day after deployment under the Pace Agreement, Pace began its "plan to hijack the [BAM] Project for themselves, and to cut Plaintiff out of the project altogether." (FAC ¶ 34.) On January 9, 2007, Pace's President, Defendant Jody Resnick, induced Plaintiff's lead contractor, Defendant Randolph Willis, as well as Mr. Axon, to work for Pace directly and terminate their relationships with Plaintiff. (FAC ¶ 27.) Pace also induced Mr. Axon to continue providing consulting services and to supply Pace with PowerCAD software for the BAM Project. (FAC ¶ 28.) Pace representatives, as well as Mr. Willis, then solicited and hired Plaintiff's entire team of Building Surveyors, consultants and other personnel from Plaintiff's proprietary database. (FAC ¶ 29.)

On January 18, 2007, Defendant Ronald Berg initiated a conference call with Plaintiff's entire BAM Project team, and told them that he was an attorney for Pace, that Plaintiff had breached the contract with Pace, that Pace had solicited each of them because of Plaintiff's breach of the contract, and that "all Independent Contractor Agreements with Plaintiff were 'null and void,' and of 'no force and effect.'" (FAC ¶ 31.) Mr. Berg and Ms. Resnick provided advice for how the Building Surveyors should "resign" from Plaintiff's employ, which they did on January 19, 2007. (FAC ¶ 31.)

On January 18, 2007, Pace notified Plaintiff that it wished to terminate the Pace Agreement "without cause" pursuant to Section 17's fourteen day notice provision. (FAC ¶ 32.) Pace then ceased performing its obligation under the Agreement, and "failed to pay all or any of the amounts due under the Pace Agreement for services performed by Plaintiff." (FAC ¶¶ 32-33.)

Finally, between January 9, 2007 and January 18, 2007, Pace made the following "false and defamatory statements" to Wilfried Graebert, the President of Plaintiff's sister company and key supplier, GiveMePower, GmbH: that Plaintiff's CEO misrepresented, prior to entering the Agreement, that he had successfully managed a similar project for McDonalds; and that Plaintiff failed to adequately staff and train its team of Building Surveyors prior to deployment of the BAM Project. (FAC ¶ 34.)

The FAC alleges the following causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of the duty of loyalty; (4) breach of fiduciary duty; (5) intentional interference with contractual relationships; (6) intentional interference with prospective economic advantage; (7) unfair competition; (8) conversion; (9) misappropriation of trade secrets; (10) fraudulent inducement; and (11) injunctive relief (seeking a preliminary and permanent injunction enjoining Defendants from using Plaintiff's proprietary information, from soliciting Plaintiff's independent contractors and employees, from breaching the non-compete provisions of the parties' agreements, and ordering the return of the proprietary information).

**B.  Application for TRO**

Based upon the allegations of the FAC, and the accompanying verification by Plaintiff's CEO, Plaintiff seeks the following temporary relief:

1.  A Temporary Restraining Order enjoining all Defendants, and their respective agents, affiliates, and independent contractors, and all persons acting under, in concert with, or for them:
    a.  From continuing to employ, solicit, or retain the following individuals formerly associated with Plaintiff: Randolph 'Skip' Willis, Diana Sanchez, Richard Chad Smith, Bob Schulte, Kevin Walker, Michael Axon, Tracey Barfield, Roger Garcia, Damon Harris, Joe McDonald, Frasier Rowe, Tracy Evers and Jerry Sams;
    b.  From soliciting Plaintiff's employees and independent contractors and inducing them to sever business relations with Plaintiff;
    c.  From interfering with Plaintiff's contractual relations and prospective economic advantage with Plaintiff's employees, independent contractors, consultants, software and equipment suppliers, and clients;
    d.  From otherwise breaching the Non-Violation [sic] and Non-hire Provisions of the Pace Agreement;
    e.  To cease and desist from using Plaintiff's proprietary list of Building Surveyors for the benefit of Defendants or anyone other than Plaintiff;

f.      To return to Plaintiff the converted and misappropriated confidential proprietary and trade secret information of Plaintiff, including but not limited to all copies, whether electronic or otherwise, of Plaintiff's client information and talent database.
        2.      An Order to Show Cause why a preliminary injunction should not be granted enjoining all Defendants, and their respective agents, affiliates, and independent contractors, and all persons acting under, in concert with, or for them, from committing the acts described above.

(Mem. Supp. Application for TRO at 11-12.)

In the Application for TRO, Plaintiff asserts that Pace's "continuing wrongful conduct will cause Plaintiff immediate irreparable injury which may not be adequately compensated by money damages." (Mem. Supp. Application for TRO at 11.) Plaintiff's entire discussion of this topic is as follows:

> [I]f the Court does not enjoin Defendants from continuing to solicit and employ Plaintiff's team of Building Surveyors and consultants, Plaintiff will be unable to retain these individuals for current and future projects, and Plaintiff will lose the competitive advantage it specifically bargained for in the Pace Agreement. The resulting loss of competitive advantage and goodwill cannot be reasonably ascertained or compensated by money damages.

(Mem. Supp. Application for TRO at 11.)

**C.    Pace's Opposition to the Application for TRO**

On March 19, 2007, Pace filed its Opposition to the Application for TRO, which included declarations from Mr. Axon and eight members of Plaintiff's former BAM Project team, each stating that Pace did not solicit or hire them. (Doc. # 8, 10, 11, 13.) Among the eight former employees or contractors for Plaintiff was Tracey Barfield. Her declaration states,

> At no time was I solicited to work for or become an employee of Pace Compumetrics, Inc. by Terry Resnick, Jody Resnick or any other party on their behalf. . . . At no time have I been employed by Pace Compumetrics, Inc. . . . I did not attend a meeting on January 18, 2007 with Jody Resnick nor did Jody Resnick arrange for me to have a telephone conference, either individually or with other members of the BAM Project team with Ronald Berg, Esq. At no time have I spoken with Ronald Berg, Esq.

(Barfield Decl. ¶¶ 2-4.)[2] The other declarations from the former BAM Project team members contain similar denials. Pace also submitted declarations from Mr. Resnick and Ms. Resnick,

---

[2] At the bottom of the declaration, Ms. Barfield wrote that she "worked for Pace Compumetrics, Inc. as an employee from 1/00-8/05." (Barfield Decl. at 1.)

- 6 -                                                                                                      07cv157

1  stating that none of Plaintiff's former contractors or employees were solicited by or employed
2  by Pace. (T. Resnick Decl. ¶¶ 3-5; J. Resnick Decl. ¶¶ 3-5.) The Resnick declarations assert
3  that with the exception of Mr. Willis, "[t]he personnel provided by Plaintiff to perform the
4  laser Measurement services and computer drawings in the field were not qualified to perform
5  those services." (T. Resnick Decl. ¶ 7; J. Resnick Decl. ¶ 8.) According to Mr. Resnick, for
6  this reason, Pace terminated the Agreement. (T. Resnick Decl. ¶ 8.)

   In its Opposition Memorandum, Pace attacks the evidentiary foundation for Plaintiff's Application for TRO: "Plaintiff has submitted no evidence from anyone with first-hand knowledge of the allegations that support the request. Instead, Plaintiff relies exclusively on its FAC that has been 'verified' by [Plaintiff's CEO] William Walton. But Mr. Walton lacks the foundation to attest to anything of import in the FAC." (Mem. Opp'n Application for TRO at 11.) Pace also argues that Plaintiff failed to establish irreparable harm and, based upon Pace's many declarations, Plaintiff failed to establish a likelihood of success on the merits.

### D. Plaintiff's Reply

On March 20, 2007, Plaintiff filed its Reply, which included paper copies of a series of e-mails.

The first e-mail, dated February 7, 2007 (three weeks after Pace terminated the Agreement and almost two weeks after Plaintiff filed the original Complaint), was from Kathy Cruz, Pace's "Office Manager," and addressed to Mr. Willis, Ms. Barfield, Mr. Axon and many other members of Plaintiff's former team on the BAM Project. The e-mail states, in part: "I would like to introduce myself. My name is Kathy Cruz and I am presently the Office Manager here at Pace Compumetrics (Los Angeles, CA). Currently, we are being required by the bank to obtain background checks on all personnel. . . . All recipients of this email are required to fill out the attached forms. These forms are to be faxed along with a copy of your resume to me. . . ." (Carr Decl., Ex. 1.) Attached to this e-mail was an "Employment and Educational Form," as well as an "Employment Eligibility Verification" form. (Carr Decl., Ex. 1.)

The next e-mail, sent the same day from Mr. Willis to Ms. Cruz, Mr. Resnick and Ms.

1  Resnick, references Ms. Cruz's prior e-mail and states in part: "This . . . e-mail was sent to CW
2  Carr in the distribution list. It is VERY likely now that documented proof of Pace working
3  with the former GMPW Consultants [is] in the hands of GMPW." (Walton Decl., Ex. 1.) The
4  next day, February 8, 2007, Mr. Resnick responded to Mr. Willis with an e-mail stating: "I just
5  looked at it and you are correct. This is a major problem with potentially disasterous [sic]
6  impact! How did Kathy get his name, and how did it end up on the e-mail!!" (Walton Decl.,
7  Ex. 1.)

8  Finally, Plaintiff attaches an e-mail from Ms. Barfield, from an e-mail address at
9  "pacecompumetrics.com", and referring to herself as "Project Coordinator, Pace
10 Compumetrics, Inc." (Walton Decl., Ex. 2.)

11 Plaintiff argues that these e-mails "directly contradict[]" the declarations submitted by
12 Pace, and show that Pace in fact hired Plaintiff's former BAM Project team members. (Reply
13 Mem. at 2.) Plaintiff further argues that Pace will not suffer any hardship from the requested
14 injunction because "Defendants may readily locate and hire a replacement team of independent
15 contractors and consultants for the BAM Project on the open market." (Reply Mem. at 2.)

16 **E.    Hearing**

17 On March 22, 2007, the Court conducted a hearing on the Application for TRO,
18 attended by counsel for Plaintiff, counsel for Pace, and counsel for Mr. Berg, as well as Mr.
19 Berg and Mr. Resnick. At the hearing, Pace submitted a "Supplemental Declaration" from Mr.
20 Resnick, which states in part:

> Pace provided Plaintiff with the 14-day notice of termination required by the contract on January 18, 2007. On January 19, 2007, Plaintiff ceased performing altogether, in further breach of the contract. Pace had no choice but to hire a replacement sub-contractor to fill the sudden and unjustified void left by Plaintiff, in order to fulfill Pace's contractual obligations to its client, [Jones Lang LaSalle]. It is my understanding that that sub-contractor has hired some of the personnel originally placed on the BAM Project by Plaintiff. Pace, however, has neither solicited nor hired any of them.

(Supplemental Resnick Decl. ¶ 5.) Mr. Resnick's Supplemental Declaration then admits that all of the e-mails attached to Plaintiff's reply were authentic, but argues that the inferences Plaintiff draws from them are mistaken. (Supplemental Resnick Decl. ¶ 6 (stating that Ms. Cruz was responding to Bank of America's request for background checks to be performed on

all BAM Project personnel, and stating that "Pace would have undertaken the very same action and would have sent the very same e-mail had Plaintiff remained on the job"); ¶ 7 ("My e-mail to Mr. Willis merely reflected my concern that Plaintiff would manipulate and use Ms. Cruz's e-mail regarding background checks as fodder for its baseless lawsuit. Unfortunately, my concern proved to be well founded. I will say it again: Pace has never solicited, hired, nor employed any former employee of Plaintiff."); ¶ 8 (stating that Ms. Barfield had a "pacecompumetrics.com" e-mail address and was identified as being "affiliated with Pace" since December 2006, "with full knowledge of Plaintiff").)

At the hearing, Pace, through counsel, agreed to return Plaintiff's confidential and/or proprietary material (consisting of a list of Plaintiff's contractors) no later than March 29, 2007.

## II. Discussion

When the nonmovant has received notice, as here, the standard for issuing a temporary restraining order is the same as that for issuing a preliminary injunction. *See Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted). The movant's burden is greater in the case of a "mandatory injunction," which seeks to alter "the status quo pendente lite." *Stanley v. Univ. of Southern Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citations omitted). "The status quo ante litem refers . . . to the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quotation omitted). Here, during the last uncontested status preceding the pending controversy, the BAM Project contractors were working on the BAM Project, employed by Plaintiff. Plaintiff's requested injunction would, in essence, require those contractors to be fired from the BAM Project with no immediate prospect of comparable employment. As such, the Court must view this as a mandatory injunction, which "is

particularly disfavored." *Stanley*, 13 F.3d at 1320 (quotation omitted). "When a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id.* (quoting *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979)).

The Ninth Circuit has described two sets of criteria for preliminary injunctive relief. *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). "Under the 'traditional' criteria, a plaintiff must show '(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).' . . . Alternatively, a court may grant the injunction if the plaintiff 'demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'" *Id.* (quoting *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995)). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998) (internal quotation marks and citations omitted).

In this case, Plaintiff does not mention the "traditional" test, but instead relies solely upon the "alternative" test, arguing that Plaintiff has established both a substantial likelihood of success and irreparable injury.

"Under any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) (citation omitted). If the moving party fails to meet this "minimum showing," the Court "need not decide whether [the movant] is likely to succeed on the merits." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

"[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citing *Los Angeles Mem'l Coliseum*

*Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended are not enough" to constitute irreparable injury) (quotation omitted). However, the Ninth Circuit also has "recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Center, Inc.*, 944 F.2d at 603 (citing *Regents of Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 519-20 (9th Cir. 1984)). Business goodwill includes a company's reputation. *See WMX Techs. v. Miller*, 80 F.3d 1315, 1325 (9th Cir. 1996).

  As an initial matter, the procedural history of this action weighs against Plaintiff's argument that money damages would be inadequate to compensate Plaintiff for the alleged harm it has suffered. In its original Complaint, filed January 25, 2007, Plaintiff sought only monetary damages, despite making the same factual allegations as it later would make in the FAC. The original Complaint then remained pending for seven weeks with no docket activity. Then, on March 14, 2007, Pace filed its Motion to Dismiss. Two days later, Plaintiff filed its FAC and Application for TRO, alleging for the first time an immediate threat of irreparable injury. Yet the FAC is focused solely on the same acts which were alleged in the original Complaint; the FAC contains no allegations of additional wrongdoing committed by Pace between the time of the filing of the original Complaint and the filing of the FAC, save for the continuing employment of Plaintiff's former BAM Project team. The import of this delay in requesting injunctive relief is heightened by the fact that the non-solicitation and non-hire provision is effective only for six months after the termination of the Pace Agreement. (FAC, Ex. 1 ¶ 18.) At the latest, the Pace Agreement was terminated on January 18, 2007. (FAC ¶ 32.) Any injunction entered pursuant to that provision would expire no later than July 18, 2007. Therefore, Plaintiff's two-month delay meant that nearly one-third of the entire length of the non-solicitation and non-hire provision had elapsed prior Plaintiff first requesting injunctive relief pursuant to that provision. In short, Plaintiff's delay in seeking injunctive relief undercuts its current argument of immediate, irreparable harm. *Cf. Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before

seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.").

Here, although Plaintiff argues that Plaintiff is likely to suffer irreparable injury if its Application for TRO is denied, Plaintiff submits no *evidence* indicating as much. Plaintiff's entire discussion of the matter is as follows:

> [I]f the Court does not enjoin Defendants from continuing to solicit and employ Plaintiff's team of Building Surveyors and consultants, Plaintiff will be unable to retain these individuals for current and future projects, and Plaintiff will lose the competitive advantage it specifically bargained for in the Pace Agreement. The resulting loss of competitive advantage and goodwill cannot be reasonably ascertained or compensated by money damages.

(Mem. Supp. Application for TRO at 11.)

This assertion of irreparable injury is too vague and conclusory to be afforded significant weight. Plaintiff fails to assert--much less prove--that Pace's alleged wrongdoing has prevented or hindered Plaintiff's bidding on or staffing of any specific job. With respect to Plaintiff's above-quoted statement that it will lose "goodwill," it is true that in some instances, loss of business goodwill can constitute irreparable injury. But Plaintiff fails even to articulate from whose perspective Plaintiff's goodwill would be lost.[3] And in any event, a conclusory assertion of "loss of goodwill" is not sufficient to warrant injunctive relief. In *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374 (9th Cir. 1985), a newspaper alleged that a competitor's use of exclusivity contracts caused it to suffer "the loss of reputation, competitiveness, and goodwill." *Id.* at 1377. The Ninth Circuit affirmed the district court's denial of a preliminary injunction on the sole ground that plaintiff failed to show irreparable injury.[4] The court stated:

> Assuming that in some cases lost reputation is irreparable, we must determine

---

[3] To the extent that Plaintiff is claiming to have been deprived of the goodwill of its former BAM Project contractors, it is doubtful that Plaintiff's requested injunction--which would result in those contractors in essence being fired--would restore that goodwill in the eyes of the contractors.

[4] Because the plaintiff in *Oakland Tribune* failed to make the threshold showing of irreparable injury, the Ninth Circuit did not consider plaintiff's likelihood of success on the merits. *See Oakland Tribune*, 762 F.2d at 1378.

> whether the trial court's finding is clearly erroneous that no irreparable loss was caused by the exclusivity provisions. Plaintiff has not shown that the decline in its sales is caused by the exclusive feature contracts. In its brief to this court, plaintiff pointed to only two affidavits to demonstrate injury. In the first, Robert Maynard, the principal shareholder of plaintiff's parent corporation, stated that defendants' use of exclusivity provisions caused plaintiff's market share to decrease. In the second, journalism professor Norman Isaacs, previously the editor of an Indiana newspaper, attested that as a general matter, when a newspaper is deprived of popular features, it is placed at a competitive disadvantage; Isaacs also attested that some features under contract to defendants are quite popular. . . . Professor Isaacs did not address the particular situation in issue, and Mr. Maynard provided only conclusory statements and was an interested party.

*Id.* at 1377 (citations omitted). If the conclusory *evidence* in *Oakland Tribune* was insufficient to establish irreparable injury, then Plaintiff's even-more-conclusory *argument* likewise is insufficient. *Cf. Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 868 F.2d 1085, 1088 (9th Cir. 1989) ("Big Country argues . . . that the irreparable injury it will suffer if injunctive relief is not granted is the 'loss of a contract.' This loss is irreparable, Big Country asserts, because even if it is successful on the merits, Alaskan law provides no monetary damages for this kind of challenge. . . . [W]e assume . . . that Big Country is referring to pecuniary injury--lost profits. If so, we need not decide if Big Country has an adequate remedy at law for this injury. The record is barren of evidence of lost profits.") (affirming the denial of a preliminary injunction solely on the basis that Plaintiff failed to show an irreparable injury).

Additionally, Plaintiff has failed to persuade the Court that any injuries it has suffered and continues to suffer as a result of Pace's alleged breach of the non-solicitation and non-hire provision could not be adequately compensated by money damages. In its brief supporting its Application for TRO, Plaintiff states that "the Court must enforce the Pace Agreement to protect Plaintiff against Defendants['] patently unfair business practices, and to protect Plaintiff's proprietary list of available, skilled Building Surveyors, *which Plaintiff spent many thousands of dollars locating, engaging and training*." (Mem. Supp. Application for TRO at 10 (emphasis added).) Plaintiff's statement indicates that it is able to quantify the amount of money it expended in assembling its BAM Project team. Presumably Plaintiff also would be capable of quantifying the money it spends in assembling and training a new team of

1  contractors, should it choose to do so. Plaintiff does not assert that the members of the BAM
2  Project team are such uniquely talented and qualified individuals that no replacements could
3  be located. Indeed, from the reverse point of view, Plaintiff states that if a TRO were granted,
4  "Defendants may *readily* locate and hire a replacement team of independent contractors and
5  consultants for the BAM Project on the open market. . . ." (Reply Mem. at 2 (emphasis
6  added).) If Plaintiff ultimately prevails on the merits, the Court is not convinced that an award
7  of monetary damages would not fully and adequately compensate Plaintiff for the damage it
8  is alleged to have suffered by Pace's alleged breach of the non-solicitation and non-hire
9  provisions. *Cf. Rent-A-Center, Inc.*, 944 F.2d at 603 ("[E]conomic injury alone does not
10 support a finding of irreparable harm, because such injury can be remedied by a damage
11 award.").

12 Because Plaintiff has failed to meet its burden of demonstrating a significant threat of
13 irreparable injury, the Court "need not decide whether [Plaintiff] is likely to succeed on the
14 merits." *Oakland Tribune, Inc.*, 762 F.2d at 1376 ("Under any formulation of the test, plaintiff
15 must demonstrate that there exists a significant threat of irreparable injury. Because the
16 Tribune has not made that minimum showing we need not decide whether it is likely to
17 succeed on the merits.") (citations omitted); *see also Arcamuzi v. Continental Air Lines, Inc.*,
18 819 F.2d 935, 937 (9th Cir. 1987) (same); *Big Country Foods*, 868 F.2d at 1088 (same).

19 **III.  Conclusion**

20 For the reasons discussed above, the Application for TRO (Doc. # 5) is **DENIED**.

21 Pursuant to its agreement made at the hearing, no later than March 29, 2007, Pace shall
22 return all of Plaintiff's confidential and/or proprietary material which is currently in Pace's
23 possession.

24 DATED: March 23, 2007

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge