Erwin J. Shustak, Esq. (CSB 119152)
Thomas C. Frost, Esq. (CSB 185187)
SHUSTAK & PARTNERS, P.C.
401 West "A" Street, Suite 2330
San Diego, CA 92101
Telephone: (619) 696-9500
Facsimile: (619) 615-5290
tfrost@shufirm.com
ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**
**IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GIVEMEPOWER CORPORATION, | CASE NO.  07-CV-0157-WQH-RBB |
| Plaintiff, | PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO DEFENDANT PACE COMPUMETRICS, INC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF FIRST AMENDED COMPLAINT |
| vs. | |
| PACE COMPUMETRICS, INC.; TERRY RESNICK; JODY RESNICK; RONALD S. BERG; and RANDOLPH WILLIS, | |
| Defendants. | Hearing Date: May 7, 2007 |
| | Motion Time: 11:00 p.m. |
| | [NO ORAL ARGUMENT UNLESS REQUESTED BY COURT] |

Plaintiff GiveMePower Corporation, ("GiveMePower") by and through its attorneys, Shustak & Partners, respectfully submits the following memorandum of points and authorities in support of its opposition to the motion of Defendant Pace Compumetrics, Inc. ("Pace") to dismiss the First Amended Complaint and motion to strike portions of the First Amended Complaint.

I.    **INTRODUCTION**

A review of the allegations set forth in the First Amended Complaint clearly demonstrates that Pace's motion to dismiss several of GiveMePower's claims is improper and should be denied.

GiveMePower properly states a claim for breach of the implied covenant of good faith and fair dealing that is distinct from its claim for breach of contract. Pace is alleged to have deprived GiveMePower of the benefits of the Agreement between the parties in which Pace engaged GiveMePower to produce detailed as-built floor plan drawings for buildings using specialized computer aided design and drafting ("CAD") software and related computing hardware. Specifically, Pace is alleged to have planned to hijack this project for itself and cut GiveMePower out of the project entirely.

In addition, GiveMePower's claims for intentional interference with contractual relations and prospective economic advantage are proper as GiveMePower has sufficiently alleged Pace's interference with 1) GiveMePower's independent contractor agreements with its Building Surveyors and expert consultants and 2) supply agreements and longstanding economic relationships with JMA Technology and GiveMePower, GmbH. Pace is also alleged to have wrongfully interfered with GiveMePower's prospective economic advantages as the interference constituted 1) breach of non-hire and non-compete agreements, 2) breach of the implied covenant of good faith and fair dealing, and 3) defamation.

Furthermore, GiveMePower has properly pled its claim for misappropriation of trade secrets as it has sufficiently identified the existence of its trade secrets. GiveMePower has alleged that its database of existing and prospective field technicians and business affiliates, contractor agreements, business plans and processes are highly confidential and proprietary and only disclosed to those who agree to non-disclosure agreements.

The motion to strike GiveMePower's claim for unfair competition under California Business and Professions Code §§ 17200, *et seq*. should also be denied. GiveMePower is entitled to any compensation or economic benefit that Pace has obtained as a result of converting GiveMePower's confidential and proprietary information. This remedy is readily available under California law as it constitutes restitution for Pace's unfair trade practices.

## II.     ARGUMENT

### A.     Legal Standard – Fed.R.Civ.P. 12(b)(6)

The Court must accept as true the allegations of the complaint in question in considering a motion to dismiss for failure to state a claim. *Hospital Bldg. Co. v. Rex Hospital Trustees,* 425 U.S. 738, 740 (1976). The Court must also construe the pleading in the light most favorable to the party opposing the

motion and resolve all doubts in that party's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). The federal rules only require notice pleading. *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir. 2002). According to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512 (2002).

Dismissal of a complaint is only proper if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Id.* at 514. Discovery and summary judgment motions and not motions to dismiss "define disputed facts" and "dispose of unmeritorious claims." *Id.* at 512. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" *Jackson v. Carey,* 353 F.3d 750, 755 (9th Cir.2003) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

Even when dismissal of a complaint is appropriate, dismissal without leave to amend is proper only if it is clear that the complaint could not be saved by any amendment. *Lee v. City of Los Angeles,* 250 F.3d 668, 692 (9th Cir.2001). "Permission to file an amended complaint complying with Rule 8(a)(2) usually is freely given because the federal rules contemplate a decision on the merits rather than a final resolution of the dispute on the basis of technicalities, particularly those relating to pleading." 5 Wright and Miller*, Federal Practice and Procedure*, § 1217 (3rd ed., 2004).

**B.     GiveMePower Properly Pled a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Pace asserts that GiveMePower fails to state a claim for breach of the implied covenant of good faith and fair dealing because GiveMePower merely alleges acts by Pace that at most constitute a breach of contract. (Pace's Mem. at 4.) Although GiveMePower does not dispute that a claim for breach of the implied covenant must contain allegations beyond those that merely demonstrate a breach of contract,

3

GiveMePower properly pleads a distinct claim for breach of the implied covenant that does more than reallege a breach of contract.[1]

The Supreme Court of California has explained that "[t]he covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 349 (2000) (emphasis in original). Here, GiveMePower clearly alleges that Pace has interfered with GiveMePower's right to receive the benefits of the Agreement between them.

Pursuant to the Pace Agreement, GiveMePower agreed to produce detailed as-built floor plan drawings for approximately 1656 Bank of America retail and commercial banking centers using specialized computer aided design and drafting ("CAD") software and related computing hardware, sold under GiveMePower's registered trade and brand name PowerCAD®. (Am. Compl. at ¶¶ 10, 13.) In consideration for GiveMePower's services, Pace promised to pay GiveMePower approximately 1.337 million dollars. (Am. Compl. at ¶ 13.) Pace then solicited and induced Michael Axon, a long-term business affiliate of GiveMePower that had been engaged for this project, to improperly supply Pace with PowerCAD® software to complete this project depriving GiveMePower of its rightful benefits under the Agreement. (Am. Compl. at ¶ 28.)

In addition, Pace contacted JMA Technology, GiveMePower's supplier of various computer hardware, laser equipment, and accessories for use on this project, and stated that Pace would be "pulling the project" from GiveMePower and that without the project GiveMePower would not be able to pay JMA for the equipment. (Am. Compl. at ¶¶ 18, 30.) Pace also stated its intention to purchase replacement equipment from JMA Technology to complete the project. (Am. Compl. at ¶ 30.) Pace's actions again interfered with GiveMePower's right to receive the benefits of their agreement as JMA Technology responded by repossessing its equipment. (*Id*.)

In furtherance of its plan to hijack this project for itself and to cut GiveMePower out of the

---

[1] Pace also appears to suggest that GiveMePower improperly seeks to incorporate by reference allegations made earlier in the Amended Complaint into the count for breach of the implied covenant of good faith and fair dealing. (Pace's Mem. at 3.) To the contrary, "[t]he Federal Rules of Civil Procedure expressly allow adoption by reference, Fed.R.Civ.P. 10(c), and do not distinguish between incorporated and unincorporated allegations." *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001).

project entirely, Pace made defamatory statements to GiveMePower's key supplier in Germany, GiveMePower GmbH: (1) that GiveMePower's president misrepresented that prior to entering the Agreement, that he had successfully managed a similar project for McDonalds; and (2) that GiveMePower failed to adequately staff and train its team of Building Surveyors prior to deployment on this project.  (Am. Compl. at ¶ 34.)

GiveMePower adequately states a claim for breach of the implied covenant as its allegations show that Pace planned to hijack this project for itself and cut GiveMePower out of the project entirely, in order to deprive GiveMePower of the benefits of the Agreement.

**C.    GiveMePower Properly Pled Claims for Intentional Interference with Contractual Relations and Intentional Interference with Prospective Economic Advantage**

Although Pace correctly identifies the necessary elements that must be pled to state claims for intentional interference with contractual relations and intentional interference with prospective economic advantage, Pace falsely asserts that GiveMePower has not properly pled the elements of these torts.

According to Pace's flawed reading of the allegations in the Amended Complaint, GiveMePower has purportedly not 1) identified any existing contractual relations or any economic relationship between GiveMePower and a third party with the probability of future economic benefit to GiveMePower; 2) alleged that Pace had knowledge of any such contractual relations or economic relationship; 3) alleged any disruption of any such contractual relations or economic relationship; and 4) alleged any damage resulting from any such disruption.  (Pace's Mem. at 6-7.)  To the contrary, GiveMePower has alleged every element required to state a claim for these torts.

GiveMePower has alleged the existence of independent contractor and other agreements with its Building Surveyors and expert consultants identified as Randolph Willis, Diana Sanchez, Richard Chad Smith, Bob Schulte, Kevin Walker, Michael Axon, Tracey Barfield, Roger Garcia, Damon Harris, Joseph McDonnell, Frasier Rowe, Tracy Evans, Jerry Sams.  (Am. Compl. at ¶¶ 17, 19, 20-23, 26, 29, 59, 65.) GiveMePower has also alleged that Pace was aware of these independent contractor and other agreements as Pace was specifically informed of these agreements.  (Am. Compl. at ¶ 25.) Pace was then alleged to have intentionally disrupted GiveMePowers relations with its independent contractors and expert consultants after Pace solicited and induced the independent contractors and expert consultants

to terminate or otherwise violate their agreements with GiveMePower.  (Am. Compl. at ¶¶ 27-29, 31, 60, 65.)  Furthermore, GiveMePower has alleged damage resulting from Pace's interference with GiveMePower's relations with its independent contractors and expert consultants as GiveMePower has lost its entire investment in sourcing, relocating, equipping, and training its independent contractors and expert consultants for this project, incurred expenses associated with promoting Mr. Willis in connection with this project, incurred expenses in bringing Mr. Willis and Michael Axon in from Florida and London in connection with this project, has lost all profits from this project, and prospective economic advantages for future projects.  (Am. Compl. at ¶¶ 17, 19, 26, 27, 29, 62, 67.)

In addition, GiveMePower has alleged the existence of its longstanding economic relationship with JMA Technology and their specific agreement for the supply of various computer hardware, laser equipment, and accessories for use on this project.  (Am. Compl. at ¶¶ 18, 59, 65.)  Pace was also alleged to be aware of GiveMePower's relationship and this specific agreement with JMA Technology as Pace contacted JMA Technology to state that Pace would be "pulling the project" from GiveMePower resulting in GiveMePower's inability to pay JMA Technology for use of its equipment and its intention to purchase replacement equipment form JMA Technology to complete the project.  (Am. Compl. at ¶¶ 30, 60, 65.)  Furthermore, GiveMePower has alleged that JMA Technology responded by repossessing its equipment.  (Am. Compl. at ¶¶ 30, 62, 67.)

Furthermore, GiveMePower has alleged the existence of its relationship with its key German supplier, GiveMePower GmbH.  (Am. Compl. ¶¶ 34, 59, 65.)  GiveMePower has also alleged that Pace was aware of this relationship with the allegation that Pace in furtherance of its plan to hijack this project for itself and to cut GiveMePower out of the project entirely made defamatory statements to GiveMePower GmbH: (1) that GiveMePower's president misrepresented that prior to entering the Agreement, that he had successfully managed a similar project for McDonalds; and (2) that GiveMePower failed to adequately staff and train its team of Building Surveyors prior to deployment on this project.  (Am. Compl. at ¶ 34, 60, 65.)  GiveMePower further alleged that Pace disrupted this relationship and GiveMePower has lost and will continue to lose business from GiveMePower GmbH.  (Am. Compl. at ¶ 34, 62, 67.)

Pace further improperly asserts that GiveMePower has failed to allege that Pace engaged in a

wrongful act other than the interference itself in connection with GiveMePower's claim for intentional interference with prospective economic advantage. (Pace's Mem. at 7.) This last element to state a claim for intentional interference with prospective economic advantage will be satisfied if it is alleged that Pace committed an act that is "unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Werner Enterprises, Inc. v. CRST Van Expedited, Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). GiveMePower has satisfied this requirement as it has alleged that: 1) Pace's interference with GiveMePower's independent contractor agreements with its Building Surveyors and expert consultants constitutes breach of the non-hire and non-compete provisions of the Agreement between GiveMePower and Pace (Am. Compl. at ¶ 16, 38-43.); 2) Pace's interference with GiveMePower's relationship and agreement with JMA Technology as discussed above constitutes breach of the implied covenant of good faith and fair dealing; and 3) Pace's interference with GiveMePower's relationship with GiveMePower GmbH as discussed above constitutes breach of the implied covenant of good faith and fair dealing and defamation.

### D.   GiveMePower Properly Pled Its Claim for Misappropriation of Trade Secrets

Pace maintains that GiveMePower has failed to properly plead its claim for misappropriation of trade secrets because GiveMePower has not identified its trade secrets with sufficient particularity.[2] (Pace's Mem. at 8-9.) Pace cites *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 250 (1968) for the proposition that "before a defendant is compelled to respond to a complaint upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the complaint should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." 260 Cal. App. 2d at 253. *Diodes*, however, is inapplicable to the present case as it is decided in state court and requires fact pleading as opposed to notice pleading required in federal court. *Id*. at 250.

---

[2]Pace also contends that its compliance with this Court's March 23, 2007 Order directing Pace to return GiveMePower's confidential list of contractors renders any claim for misappropriation of trade secrets moot. (Pace's Br. At 2, fn. 1.) Pace, however, fails to show that any further injunctive relief is not warranted to eliminate any commercial advantage Pace has acquired from its misappropriation of GiveMePower's trade secrets. Cal. Code Civ. § 3426.2. In addition, Pace has not demonstrated how compliance with the Court's order deprives GiveMePower of the remedies available to it under Cal. Civ. Code § 3426.3.

In order to plead the existence of a trade secret, GiveMePower is only required to state that the "matter sought to be protected is information (1) which is valuable because it is unknown to others and (2) which the owner has attempted to keep secret." *Dealertrack, Inc. v. Huber*, 460 F.Supp.2d 1177, 1183-1184 (C.D. Cal. 2006). GiveMePower has properly pled the existence of its trade secrets as it has alleged that its database of existing and prospective field technicians and business affiliates, contractor agreements, business plans and processes developed by GiveMePower for its project with Pace are highly confidential and proprietary and only disclosed to those who agree to non-disclosure agreements. (Am. Compl. at ¶¶ 25, 82.)

**E.    Legal Standard – Fed.R.Civ.P. 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading…any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), rev'd on other grounds, 510 U.S. 517 (1994). Motions to strike are generally viewed with disfavor and are not frequently granted. *See Bassiri v. Xerox Corp.*, 292 F.Supp.2d 1212, 1220 (C.D.Cal.2003), rev'd and remanded on other grounds, 463 F.3d 927 (9th Cir. 2006). Courts must view the pleading under attack in the light more favorable to the pleader. *See id.* "[M]otions to strike should not be granted unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation." *Gay-Straight Alliance Network v. Visalia Unified School Dist.*, 262 F.Supp.2d 1088, 1099 (E.D.Cal.2001).

**F.    GiveMePower's Claim for Unfair Competition Should Not Be Stricken as the Remedy Requested Is Available under California's Unfair Competition Law.**

It is clear that GiveMePower is only entitled to injunctive relief and restitution for Pace's violation of California Business and Professions Code §§ 17200, *et seq.* (California's "Unfair Competition Law" or "UCL"). *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Notwithstanding this limitation on the scope of remedies available for a violation of the UCL, GiveMePower is entitled to any compensation or economic benefit that Pace has obtained as a result of converting GiveMePower's confidential and proprietary information including its independent contractor

8

database, independent contractor agreements, business plans, and processes.

The Supreme Court of California has defined an order for restitution under the UCL as one "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." *Id.* at 1149. The court explained that a plaintiff would be deemed to have an ownership interest in the property, if the plaintiff can demonstrate that it has a vested interest in the property. *Id.* This can be accomplished by demonstrating that the property at issue can be "likened to 'property' converted by the [defendant] that can now be the subject of a constructive trust." *Id.* at 1150. The court further explained that a constructive trust is created where "money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Id.*

In the instant case, the recovery requested can be traced to particular property in Pace's possession and therefore is the proper subject of a constructive trust. GiveMePower alleges that Pace fraudulently induced GiveMePower to provide access to its confidential and proprietary information that Pace then converted. (Am. Compl. at ¶¶ 71-73, 77, 86-90.) As discussed above, GiveMePower seeks recovery of the compensation and economic benefit that Pace obtained as a result of converting GiveMePower's confidential and proprietary information. Pace has not demonstrated that GiveMePower will be unable to trace the recovery it seeks to its confidential and proprietary information in Pace's possession.

## III.   CONCLUSION

Based on the foregoing GiveMePower respectfully requests that Pace's motion to dismiss the First Amended Complaint and strike portions of the First Amended Complaint be denied in all respects.

DATED: April 23, 2007                    SHUSTAK & PARTNERS, P.C.

                                 By:    s/Erwin J. Shustak
                                         Erwin J. Shustak
                                         Thomas C. Frost
                                         401 West A Street, Suite 2330
                                         San Diego, CA 92101
                                         Telephone: (619) 696-9500
                                         Facsimile: (619) 615-5290
                                         ATTORNEYS FOR PLAINTIFF