Erwin J. Shustak, Esq. (CSB 119152)
Thomas C. Frost, Esq. (CSB 185187)
Arian A. Baryalai, Esq. (CSB 242085)
SHUSTAK & PARTNERS, P.C.
401 West "A" Street, Suite 2330
San Diego, CA 92101
Telephone: (619) 696-9500
Facsimile: (619) 615-5290
tfrost@shufirm.com
ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT
# IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIVEMEPOWER CORPORATION, ) | **CASE NO. 07-CV-0157-WQH-RBB** |
| ) | |
| Plaintiff, ) | PLAINTIFF'S MEMORANDUM OF POINTS |
| ) | AND AUTHORITIES IN SUPPORT OF ITS |
| vs. ) | OPPOSITION TO DEFENDANT RONALD S. |
| ) | BERG'S MOTION TO DISMISS FIRST |
| PACE COMPUMETRICS, INC.; TERRY ) | AMENDED COMPLAINT AND MOTION TO |
| RESNICK; JODY RESNICK; RONALD S. ) | STRIKE SEVENTH CAUSE OF ACTION OF |
| BERG; and RANDOLPH WILLIS, ) | FIRST AMENDED COMPLAINT |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff GiveMePower Corporation, ("GiveMePower") by and through its attorneys, Shustak & Partners, respectfully submits the following memorandum of points and authorities in support of its opposition to the motion of Defendant Ronald S. Berg ("Berg") to dismiss the First Amended Complaint and motion to strike the seventh cause of action of the First Amended Complaint.

**I.     INTRODUCTION**

1

A review of the allegations set forth in the First Amended Complaint clearly demonstrates that Berg's motion to dismiss all of GiveMePower's claims against Berg is improper and should be denied.[1]

GiveMePower has properly pled its claims for intentional interference with contractual relations and intentional interference with prospective economic advantage as GiveMePower has alleged that Berg intentionally disrupted GiveMePower's independent contractor and other agreements with its Building Surveyors by falsely advising them that their independent contractor and other agreements with GiveMePower were void and by coaching them how to "resign" from GiveMePower's employ. Berg cannot escape liability for the damages that his tortious conduct caused GiveMePower by asserting that the Building Surveyors had no duty to perform under their independent contractor and other agreements with GiveMePower, because Berg has failed to show that performance was more than at most temporarily impossible. Berg is also alleged to have wrongfully interfered with GiveMePower's prospective economic advantages as his interference constitutes a violation of California Business and Professions Code §§ 17200, *et seq.* (California's "Unfair Competition Law" or "UCL").

In addition, Berg's assertion that his conduct does not amount to a violation of the UCL is without merit as there is no serious dispute that his intentional interference with GiveMePower's independent contractor and other agreements with its Building Surveyors is not an actionable violation of the UCL. Furthermore, notwithstanding Berg's statements to the contrary, GiveMePower is clearly entitled to pursue injunctive relief for Berg's violation of the UCL.

**II.   ARGUMENT**

   **A.   Legal Standard – Fed.R.Civ.P. 12(b)(6)**

The Court must accept as true the allegations of the complaint in question in considering a motion to dismiss for failure to state a claim. *Hospital Bldg. Co. v. Rex Hospital Trustees,* 425 U.S. 738, 740 (1976). The Court must also construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in that party's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969).

---

[1] Berg suggests that because he was not included in the original complaint but subsequently included in the Amended Complaint, there should be an inference that he was only included in the Amended Complaint as a "ploy to further attack Pace and remove Pace's counsel in this matter." (Berg's Mem. at 2, fn. 1.) Notwithstanding the lack of any logical basis for this inference, Berg has not cited any legal authority that suggests that it is improper to name additional defendants in an amended complaint.

The federal rules only require notice pleading. *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir. 2002). According to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512 (2002).

Dismissal of a complaint is only proper if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Id.* at 514. Discovery and summary judgment motions and not motions to dismiss "define disputed facts" and "dispose of unmeritorious claims." *Id.* at 512. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" *Jackson v. Carey,* 353 F.3d 750, 755 (9th Cir.2003) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

Even when dismissal of a complaint is appropriate, dismissal without leave to amend is proper only if it is clear that the complaint could not be saved by any amendment. *Lee v. City of Los Angeles,* 250 F.3d 668, 692 (9th Cir.2001). "Permission to file an amended complaint complying with Rule 8(a)(2) usually is freely given because the federal rules contemplate a decision on the merits rather than a final resolution of the dispute on the basis of technicalities, particularly those relating to pleading." 5 Wright and Miller, *Federal Practice and Procedure*, § 1217 (3rd ed., 2004).

**B. GiveMePower Has Properly Pled Claims for Intentional Interference with Contractual Relations and Intentional Interference with Prospective Economic Advantage**

Although Berg correctly identifies the necessary elements that must be pled to state claims for intentional interference with contractual relations and intentional interference with prospective economic advantage, Berg falsely asserts that GiveMePower has not properly pled the elements of these torts.

**1.   GiveMePower Has Identified Existing Contractual Relations and Economic Relationships between GiveMePower and Third Parties with the Probability of Future Economic Benefit to GiveMePower and Alleged that Berg Had Knowledge of these Contractual Relations and Economic Relationships**

According to Berg's flawed reading of the allegations in the Amended Complaint, GiveMePower has purportedly not 1) identified any existing contractual relations or any economic relationship between GiveMePower and a third party with the probability of future economic benefit to GiveMePower and 2) alleged that Berg had knowledge of any such contractual relations or economic relationship. To the contrary, GiveMePower has alleged every element required to state a claim for these torts.

GiveMePower has alleged that it entered into an agreement with Pace Compumetrics, Inc. ("Pace") to produce detailed as-built floor plan drawings for approximately 1656 Bank of America retail and commercial banking centers using specialized computer aided design and drafting ("CAD") software and related computing hardware. (Am. Compl. at ¶ 13.) In connection with this project (the "BAM project"), GiveMePower assembled a team of Building Surveyors from its proprietary database of prospective field technicians and executed independent contractor agreements and other agreements with them. (Am. Compl. at ¶ 17.) GiveMePower then made all necessary arrangements to relocate, equip, and train these new members of the BAM project team at GiveMePower's own expense. (*Id*.)

Berg is then alleged to have falsely advised GiveMePower's team of Building Surveyors on the BAM project that GiveMePower intentionally breached its agreement with Pace and, as a result, all independent contractor and other agreements with GiveMePower were "null and void" and of "no force and effect." (Am. Compl. at ¶ 31.) Berg is further alleged to have provided specific advice and "coaching" to the members of the BAM project team on how to "resign" from GiveMePower's employ in phone calls they made to GiveMePower in breach of their independent contractor and other agreements with GiveMePower.[2] (Am. Compl. at ¶¶ 31.).

---

[2] Although there is no question that Berg's denial of the allegations against him in the Amended Complaint is not relevant to a determination of the issues presented in his motion to dismiss, GiveMePower responds by stating that it will provide at the appropriate time sworn statements as well as additional documentary evidence refuting Berg's denial of these allegations.

As these allegations in the Amended Complaint make clear, there is no serious dispute as to whether GiveMePower identified any existing contractual relations or any economic relationship between GiveMePower and a third party with the probability of future economic benefit to GiveMePower or that Berg had knowledge of any such contractual relations or economic relationship.

### 2. Berg's Conduct Is a Substantial Cause of GiveMePower's Damages

Berg also argues that his conduct as alleged in the Amended Complaint cannot be a substantial cause of GiveMePower's damages. (Berg's Mem. at 6.) Berg focuses on the allegation in paragraph 30 of the Amended Complaint that Pace wrongfully caused JMA Technology to repossess the equipment it supplied to GiveMePower for use on the BAM project. (*Id.*) Repossession of this equipment according to Berg rendered performance by the Building Surveyors under their independent contractor and other agreements with GiveMePower impossible, thereby discharging any duty to perform under these agreements. (*Id.*) Berg then maintains that because the duty to perform under these agreements was discharged his conduct could not have caused the Building Surveyors to breach their agreements with GiveMePower.[3]  (*Id.*)

This argument fails, however, as repossession of the equipment at most renders performance by the Building Surveyors temporarily impossible. Under California law, "[t]he obligation to perform is not excused or discharged by a temporary impossibility – it is merely suspended – unless the delayed performance becomes materially more burdensome or the temporary impossibility becomes permanent." *Maudlin v. Pacific Decision Sciences Corporation*, 137 Cal. App. 4th 1001, 1017 (2006). Here, Berg has made no showing that GiveMePower would not be able to secure equipment from another supplier or that delayed performance would become materially more burdensome to the Building Surveyors. As the Court must construe the Amended Complaint in the light most favorable to GiveMePower and resolve all doubts in its favor, *Jenkins*, 395 U.S. at 421, Berg has failed to demonstrate that its false advice to the Building Surveyors that their independent contractor and other agreements with

---

[3] Berg also appears to suggest in a footnote that GiveMePower is solely responsible for the inability to perform and subsequent resignations of the Building Surveyors as GiveMePower "chose to walk off the job." (Berg's Mem. at 7, fn. 3.) Berg apparently ignores well-settled law that a party to a contract has no duty to continue performing after the other party materially breaches the contract. *Chodos v. West Publishing Co.*, 292 F.3d 992, 1001 (9th Cir. 2002).

5

GiveMePower were void and coaching on how to terminate their agreements with GiveMePower were not substantial factors in causing damage to GiveMePower as discussed below.

### 3. GiveMePower Has Suffered Damages as a Result of Berg's Conduct

Berg cites the Court's March 23, 2007 Order denying GiveMePower's application for a temporary restraining order and preliminary injunctive relief to support its assertion that GiveMePower has suffered no damages as a result of Berg's conduct. (Berg's Mem. at 7.) Berg, however, misconstrues the Court's Order as the only issue decided was whether GiveMePower established irreparable injury and not whether GiveMePower suffered any damages resulting from Berg's conduct. March 23, 2007 Order at 14.

GiveMePower has properly alleged that it has suffered damages resulting from Berg's interference with GiveMePower's relations with its Building Surveyors as the Amended Complaint makes clear that GiveMePower has lost its entire investment in sourcing, relocating, equipping, and training its Building Surveyors for the BAM project and has also lost all profits from this project. (Am. Compl. at ¶¶ 17, 62, 67.)

### 4. Berg's Conduct Was Independently Wrongful

Berg further asserts that GiveMePower's claim for intentional interference with prospective economic advantage is improper because GiveMePower has purportedly failed to allege that Berg engaged in conduct that was wrongful by some legal measure other than the fact of the interference itself. (Berg's Mem. at 8.) To the contrary, GiveMePower has properly alleged that Berg's conduct was wrongful for a reason other than that he interfered with GiveMePower's prospective economic advantages.

As alleged in the Amended Complaint and discussed in further detail below, Berg's conduct constitutes a violation of the UCL. (Am. Compl. at ¶ 31, 69-70.) The Ninth Circuit in *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099 (9th Cir. 2007), has held that "the requirement of an independently wrongful act under California law of intentional interference with prospective economic relations may be satisfied even by an alleged violation of a borrowing statute like the UCL." CRST, 479 F.3d 1110-1111. The court explained that "even though the act that constitutes the violation of tort duties...is the same, it also violates the law, to wit, the UCL, independent of those tort duties. *Id.*

at 1111. As a result, Berg's conduct qualifies as an independently wrongful act and GiveMePower has properly pled a claim for intentional interference with prospective economic advantage.

### C.  GiveMePower Has Properly Pled a Claim for Unfair Competition

Berg's assertion that his conduct as alleged in the Amended Complaint does not constitute a violation of the UCL is without merit. As Berg correctly points out, GiveMePower is only required to allege that Berg engaged in an unlawful, unfair, or fraudulent business act or practice to plead a violation of the UCL. (Berg's Mem. at 8.) The term "unlawful" has been interpreted to embrace anything that can properly be called a business practice and that is forbidden by law. *CRST*, 479 F.3d at 1107. GiveMePower has properly pled its claim for a violation of the UCL as it has alleged that Berg intentionally interfered with GiveMePower's independent contractor and other agreements with its Building Surveyors. *See id.* (violation of the UCL is adequately alleged with allegation that defendant engaged in intentional interference with existing contracts of employment).

### D.  GiveMePower Is Entitled to Injunctive Relief for Berg's Violation of the UCL

Berg also moves to strike GiveMePower's claim for a violation of the UCL to the extent that GiveMePower seeks remedies not unavailable as a matter of law. (Berg's Mem. at 9.) The motion to strike must be denied, however, as GiveMePower elects to pursue only injunctive relief against Berg for his violation of the UCL. *See CRST*, 479 F.3d at 1107 ("The UCL provides a cause of action for parties injured by any 'unlawful, unfair or fraudulent business act or practice' to seek injunctive relief.").

### E.  GiveMePower Has Properly Pled a Claim for Injunctive Relief

Berg contends that there is no reasonable grounds for GiveMePower to maintain a request for injunctive relief against Berg.[4] To the contrary, GiveMePower has alleged that Berg intentionally interfered with GiveMePower's independent contractor and other agreements with its Building Surveyors by falsely advising them that their independent contractor and other agreements with GiveMePower were void and by coaching them how to "resign" from GiveMePower's employ. (Am. Compl. at ¶ 31.) As discussed above, Berg's conduct constitutes a violation of the UCL which provides GiveMePower the

---

[4] Berg maintains that GiveMePower has waived its right to permanent injunctive relief because it withdrew its application for a temporary restraining order and preliminary injunction against Berg. (Berg's Mem. at 10.) Berg, however, fails to cite any legal authority for such a proposition.

7

right to injunctive relief. *CRST*, 479 F.3d at 1107. As such, GiveMePower is entitled to injunctive relief prohibiting Berg from further interfering with GiveMePower's relations with its remaining Building Surveyors.

## III. CONCLUSION

Based on the foregoing GiveMePower respectfully requests that Berg's motion to dismiss the First Amended Complaint and motion to strike the seventh cause of action of the First Amended Complaint be denied in all respects.

DATED: May 2, 2007                    SHUSTAK & PARTNERS, P.C.

By: s/Arian A. Baryalai
Erwin J. Shustak
Thomas C. Frost
Arian A. Baryalai
401 West A Street, Suite 2330
San Diego, CA 92101
Telephone: (619) 696-9500
Facsimile: (619) 615-5290
ATTORNEYS FOR PLAINTIFF