1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11  GIVEMEPOWER CORPORATION,                    CASE NO. 07cv157 WQH (RBB)

12                              Plaintiff,      **ORDER**

13      vs.                                     (Docs. # 20, 23 & 25)

14  PACE COMPUMETRICS, INC.; TERRY
    RESNICK; JODY RESNICK; RONALD
15  S. BERG; and RANDOLPH WILLIS,

16                              Defendants.

17

18  HAYES, Judge:

19          Three motions are pending before the Court: (1) Defendant Pace Compumetrics, Inc.'s

20  Motion to Dismiss Plaintiff's First Amended Complaint and to Strike Portions of Plaintiff's

21  First Amended Complaint (Doc. # 20); (2) Defendant Ronald S. Berg's Motion To Dismiss

22  Plaintiff's Verified First Amended Complaint, or in the Alternative as to the Seventh Cause

23  of Action, to Strike the Seventh Cause of Action (Doc. # 23);[1] and (3) Defendant Terry

24  Resnick's and Defendant Jody Resnick's Motion to Dismiss Plaintiff's First Amended

25  Complaint and to Strike Portions of Plaintiff's First Amended Complaint (Doc. # 25).

26  **I.     Background**

27          On January 25, 2007, Plaintiff filed its Complaint against Defendant Pace

28
    _____
            [1] Berg's Motion to Dismiss was refiled as Document Number 24.

Compumetrics, Inc. ("Pace").    On March 16, 2007, Plaintiff filed an Application for Temporary Restraining Order ("Application for TRO") and "Verified First Amended Complaint" ("FAC").  (Docs. # 4 & 5.)  On March 23, 2007, the Application for TRO was denied.  (Doc. # 17.)  The FAC names five Defendants: Pace; Terry Resnick, Pace's CEO; Jody Resnick, Pace's President; Ronald S. Berg, Pace's attorney; and Randolph Willis, Plaintiff's former Senior Project Engineer.[2]  (FAC ¶¶ 3-6.)

## A.    Allegations of the FAC

On December 13, 2006, Pace retained Plaintiff on a project (the "BAM project") to provide building floor plan drawings (known as "building surveys") for 1,016 Bank of America building sites in Texas, Georgia, Tennessee, North Carolina, South Carolina and Kentucky, pursuant to a written "Agreement for Professional Services" ("Pace Agreement"). (FAC ¶¶ 12-13, Ex. 1.)  On January 1, 2007, the Pace Agreement was expanded to include an additional 640 building sites in Florida.  (FAC ¶ 12.)  As part of the BAM project, Plaintiff agreed to use its proprietary "computer aided design and drafting" ("CAD") software (known as "PowerCAD") and also provide expert consulting services.  (FAC ¶ 10.)  In consideration for these services, Pace promised to pay Plaintiff approximately $1.337 million.  (FAC ¶ 13.)

The Pace Agreement provides, in part:

> B.    While this Agreement is in effect, and for a period of six (6) months following termination of this Agreement for any reason, both parties agree that they shall not hire, solicit, approach or encourage for the purpose of employing or engaging any of the other party's employees, consultants, contractors or subcontractors, without first obtaining the prior written consent of the other party.

(FAC, Ex. 1 § 18.)  The Pace Agreement further provides that it shall be governed and interpreted by California law.  (FAC, Ex. 1 § 24.)

In preparation for deployment pursuant to the Pace Agreement, Plaintiff assembled a team of building surveyors from its proprietary database of prospective field technicians. (FAC ¶ 17.)  During December 2006 and early January 2007, Plaintiff paid for the relocation, training and equipping of these team members, in preparation for the January 8, 2007

---

[2] On July 6, 2007, Plaintiff voluntarily dismissed its action against Randolph Willis. (Doc. # 54.)

deployment of the team.  (FAC ¶ 17.)  Each of the building surveyors retained by Plaintiff for the BAM project entered into Non-Disclosure Agreements and Independent Contractor Agreements with provisions intended to protect Plaintiff's proprietary information and business relationships and to provide for injunctive relief in the event of breach.  (FAC ¶ 22, Exs. 3-6.)

Beginning in December 2006, and continuing to January 18, 2007, Plaintiff provided Defendants Jody Resnick and Terry Resnick ("the Resnicks") with Plaintiff's proprietary database of existing and prospective field technicians and confidential business plans and processes developed by Plaintiff for the BAM project.  (FAC ¶ 25.)  Plaintiff also paid for its business affiliate, Michael Axon, to fly from England to Houston to provide expert training on the use of Plaintiff's PowerCAD software to Pace representatives and to Plaintiff's BAM project team.  (FAC ¶ 26.)

Plaintiff leased various computer hardware, laser equipment and accessories from JMA Technology, Inc. ("JMA"), a longtime supplier to Plaintiff, to use in connection with the BAM project.  (FAC ¶ 18.)  Plaintiff had secured an extremely favorable 30 day deal with JMA for the equipment, delivery and support services.  (FAC ¶ 18.)

On January 3, 2007, five Pace representatives, including the Resnicks, traveled to Dallas, Texas to attend a BAM project training session held by Plaintiff.  (FAC ¶ 24.)  Prior to training commencement, the Resnicks "confirmed that all Pace representatives present were bound by the Non Disclosure Agreement and all provisions of the Pace Agreement previously executed by Pace."  (FAC ¶ 24.)  "[I]n reliance on the non-disclosure, non-compete, and other related provisions of the various agreements," Plaintiff provided the Resnicks with Plaintiff's "exclusive, proprietary and highly confidential information, and valuable trade secrets," including "Plaintiff's proprietary database of existing and prospective field technicians and business affiliates."  (FAC ¶ 25.)

On January 9, 2007, one day after deployment under the Pace Agreement, Pace began its "plan to hijack the BAM Project for themselves, and to cut Plaintiff out of the project altogether."  (FAC ¶ 34.)  On January 9, 2007, Pace's President, Jody Resnick, induced

Plaintiff's lead contractor, Randolph Willis, as well as Michael Axon, to work for Pace directly and terminate their relationships with Plaintiff.  (FAC ¶ 27.)  Pace also induced Axon to "improperly supply Pace with PowerCAD software for use on the BAM Project, depriving Plaintiff of its rightful income and profits on the licensing of such software." (FAC ¶ 28.) The Resnicks and other Pace representatives then solicited and hired Plaintiff's entire team of building surveyors, consultants and other personnel from Plaintiff's proprietary database. (FAC ¶ 29.)

On January 17, 2007, the Resnicks contacted JMA and advised JMA that Pace was, "'pulling the project' from Plaintiff, and that without the project, Plaintiff would not be able to pay JMA for the equipment supplied under Plaintiff's favorable 30 day terms with JMA." (FAC ¶ 30.)  As a result of these "false and misleading statements," JMA repossessed all of the leased equipment.   (FAC ¶ 30.)

On January 18, 2007, Jody Resnick arranged a conference call between Defendant Ronald Berg and Plaintiff's entire BAM project team, in which Berg told the BAM project team that he was an attorney for Pace, that Plaintiff had breached the contract with Pace, that Pace had solicited each of them because of Plaintiff's breach of the contract, and that "all Independent Contractor Agreements with Plaintiff were 'null and void,' and of 'no force and effect.'" (FAC ¶ 31.) Berg and Jody Resnick provided advice for how the building surveyors should "resign" from Plaintiff's employ, which they did on January 19, 2007.  (FAC ¶ 31.)

On January 18, 2007, Pace notified Plaintiff that it wished to terminate the Pace Agreement "without cause." (FAC ¶ 32.) Pace immediately ceased performing its obligations under the Pace Agreement, and "failed to pay all or any of the amounts due under the Pace Agreement for services performed by Plaintiff."  (FAC ¶¶ 32-33.)

Finally, between January 9, 2007 and January 18, 2007, Terry Resnick and other Pace representatives made the following "false and defamatory statements" to the President of Plaintiff's sister company and key supplier, GiveMePower, GmbH: that Plaintiff's CEO misrepresented, prior to entering the Pace Agreement, that he had successfully managed a similar project for McDonalds; and that Plaintiff failed to adequately staff and train its team

of building surveyors prior to deployment of the BAM project.  (FAC ¶ 34.)

The FAC alleges the following causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of the duty of loyalty; (4) breach of fiduciary duty; (5) intentional interference with contractual relationships; (6) intentional interference with prospective economic advantage; (7) unfair competition; (8) conversion; (9) misappropriation of trade secrets; (10) fraudulent inducement; and (11) injunctive relief.

### B.    Motions to Dismiss

Pace, the Resnicks and Berg each filed motions to dismiss.  Pace moves for the dismissal of the following causes of action: breach of the implied covenant of good faith and fair dealing; intentional interference with contractual relationships; intentional interference with prospective economic advantage; and misappropriation of trade secrets.  Pace also moves to strike Plaintiff's unfair competition cause of action.

The Resnicks move for the dismissal of the following causes of action: breach of contract; breach of the implied covenant of good faith and fair dealing; intentional interference with contractual relationships; intentional interference with prospective economic advantage; misappropriation of trade secrets; and fraudulent inducement.  The Resnicks also move to strike Plaintiff's unfair competition cause of action.

Berg moves for the dismissal of the following causes of action: intentional interference with contractual relationships; intentional interference with prospective economic advantage; unfair competition; and injunctive relief.  Berg alternatively moves to strike Plaintiff's unfair competition cause of action.

## II.    Discussion

### A.    Motion to Dismiss Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *See De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).  A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level.  *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965

(2007).  Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief.  *See id.* (citing Fed R. Civ. P. 8(a)(2)).  In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom.  *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003), *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996).

### B.     Breach of Contract

The Resnicks move for the dismissal of Plaintiff's breach of contract claim, contending that they are not a party to any contract with Plaintiff.  (Resnicks Mot. Dismiss, Doc. # 25, at 3-4.)  The Resnicks argue that the Pace Agreement and the Non-Disclosure Agreement were contracts between Plaintiff and Pace Compumetrics, Inc., and not the Resnicks personally. (Resnicks Mot. Dismiss, Doc. # 25, at 3-4.)

"Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually." *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970); *see also Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 512 n.20 (1986); *Bhari Info. Tech. Sys. v. Allied Boston Bank Inc.*, No. 05-01223, 2005 WL 3481473, *5 (N.D. Cal., Dec. 20, 2005).   An explicit personal guarantee may be enough to bind an officer individually.  *See Michael Distrib. Co. v. Tobin,* 225 Cal. App. 2d 655, 660-62 (1964).

Plaintiff alleges: "Prior to training commencement, the Resnicks confirmed that all Pace representatives present were bound by the Non Disclosure Agreement and all provisions of the Pace Agreement previously executed by Pace."   (FAC ¶ 24.)   Plaintiff further alleges, "Defendants Terry Resnick and Jody Resnick each entered into a Non-Disclosure Agreement with Plaintiff, which is a valid enforceable contract" and "[t]he Resnicks breached the Non-Disclosure Agreement."  (FAC ¶ 41.)

Viewing the allegations in the light most favorable to the Plaintiff, the court finds that Plaintiff has stated a claim for breach of contract against the Resnicks.  Plaintiff alleges that

1  the Resnicks purported to bind themselves personally to the Pace Agreement and the Non-

2  Disclosure Agreement, and that the Resnicks breached those contracts.   Therefore, the

3  Resnicks' Motion to Dismiss Plaintiff's breach of contract cause of action is denied.

4       **C.      Breach of Implied Covenant of Good Faith and Fair Dealing**

5       Pace and the Resnicks move for the dismissal of Plaintiff's claim for breach of the

6  implied covenant of good faith and fair dealing, arguing that the claim is an "impermissible

7  attempt to transmute a breach of contract cause of action into a tortious act."   (Pace Mot.

8  Dismiss, Doc. # 20, at 3; Resnicks Mot. Dismiss, Doc. # 25, at 5 (incorporating by reference

9  the arguments in the Pace Motion to Dismiss).)

10       "[U]nder California law, all contracts have an implied covenant of good faith and fair

11  dealing."   *In re Vylene Enters., Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (citing *Harm v.*

12  *Frasher*, 181 Cal. App. 2d 405, 417 (1960)).   The covenant "exists merely to prevent one

13  contracting party from unfairly frustrating the other party's right to receive the benefits of the

14  agreement actually made." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000).   However,

15  the covenant "cannot impose substantive duties or limits on the contracting parties beyond

16  those incorporated in the specific terms of their agreement."   *Id.*   Thus, to the extent a plaintiff

17  seeks to impose limits "*beyond* those to which the parties actually agreed, the [implied

18  covenant] claim is invalid.   To the extent the implied covenant claim seeks simply to invoke

19  terms to which the parties *did* agree, it is superfluous." *Id.* at 352 (emphasis in original).   "The

20  central teaching of *Guz* is that in most cases, a claim for breach of the implied covenant can

21  add nothing to a claim for breach of contract."   *Lamke v. Sunstate Equip. Co., LLC.*, 387 F.

22  Supp. 2d 1044, 1047 (N.D. Cal. 2004).

23       Nevertheless, a plaintiff may bring an implied covenant claim where the plaintiff alleges

24  that the defendant acted in bad faith to frustrate the contract's benefits.   *See Guz*, 24 Cal. 4th

25  at 353 n.18 (acknowledging that "the covenant might be violated if termination of an at-will

26  employee was a mere pretext to cheat the worker out of another contract benefit to which the

27  employee was clearly entitled. . . ."); *see also McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d

28  1142, 1153 (N.D. Cal. 2002) (applying California law).   For instance, in *In re Vylene*

*Enterprises*, a franchisee without any exclusive territory claimed the franchisor breached the implied covenant by placing a competing business just a mile-and-a-half away.  The Ninth Circuit held that under California law, the franchisee "did not have any rights to exclusive territory under the terms of the franchise agreement, and we do not impliedly read any such rights into the contract.  However, [the franchisor]'s construction of a competing restaurant within a mile and a half of [the franchisee]'s restaurant was a breach of the covenant of good faith and fair dealing.  The bad faith character of the move becomes clear when one considers that building the competing restaurant had the potential to not only hurt [the franchisee], but also to reduce [the franchisor]'s royalties from [the franchisee]'s operations."  *In re Vylene Enters.*, 90 F.3d at 1477.

Here, the FAC alleges:

> On or about January 17, 2007, the Resnicks contacted John McLean, the Vice President of JMA Technology, Plaintiff's longtime equipment supplier. In violation of Non-Disclosure agreements, the Resnicks advised Mr. McLean that Pace was 'pulling the project' from Plaintiff, and that without the project, Plaintiff would not be able to pay JMA for the equipment supplied under Plaintiff's favorable 30 day terms with JMA.  The Resnicks also advised Mr. McLean that they intended to purchase replacement equipment to complete the BAM Project.  As a result of Defendants' false and misleading statements, Mr. McLean repossessed all of the equipment from the Holiday Inn Express Hotel in Houston, where Plaintiff's team was temporarily based.  Defendants Willis and Jody Resnick assisted Mr. McLean's efforts to collect the equipment from Plaintiffs' Building Surveyors.

(FAC ¶ 30.)

Viewing these allegations in the light most favorable to Plaintiff, the Resnicks' alleged efforts to induce Plaintiff's equipment supplier to repossess the equipment Plaintiff needed to perform the Pace Agreement was a bad faith move that could frustrate Plaintiff's ability to perform, and receive the benefits from, the Pace Agreement.  This is sufficient to allege a breach of the covenant of good faith and fair dealing against the Resnicks and Pace.  *See In re Vylene Enters.*, 90 F.3d at 1477.

Additionally, in the Pace Agreement, Plaintiff agreed to produce floor plan drawings for approximately 1656 Bank of America banking centers using Plaintiff's specialized CAD software and related computing hardware.  (FAC ¶¶ 10-13.)  As alleged in the FAC, Pace then solicited and induced Michael Axon, who had been engaged by Plaintiff, to improperly supply

Pace with Plaintiff's software for use on the BAM project, thereby depriving Plaintiff of the benefits of the Pace Agreement.  (FAC ¶¶ 13, 28.)

Pace argues that the allegation that Pace induced Axon to supply Place with Plaintiff's software cannot state a claim for breach of the implied covenant of good faith and fair dealing because "nowhere in the FAC does [Plaintiff] allege that it agreed to provide said software to Pace as a term of any of the identified agreements, or that Pace agreed to acquire the same from [Plaintiff]."  (Pace Reply Br., Doc. # 34, at 2.)  However, a bad faith action which does not violate the express terms of the contract may nonetheless constitute a breach of the implied covenant of good faith and fair dealing.  *See In re Vylene Enters.*, 90 F.3d at 1477.  The Court finds that Plaintiff's allegation that Pace induced Michael Axon to supply Pace with Plaintiff's software is sufficient to allege a breach of the covenant of good faith and fair dealing against Pace.

For these reasons, the motions to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing are denied.

**D.     Intentional Interference with Contractual Relationships**

Pace, the Resnicks and Berg move to dismiss Plaintiff's claim "that all Defendants, acting in concert and for the purpose of injuring Plaintiff, have interfered with, and continue to attempt to interfere with, contractual relationships between Plaintiff and its respective key employees, independent contractors, software and equipment suppliers, and customers." (FAC ¶ 60.)

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998) (quotation omitted).

In the FAC, Plaintiff identifies independent contractor and expert consultant contracts with Randolph Willis, Diana Sanchez, Richard Chad Smith, Bob Schulte, Kevin Walker,

Michael Axon, Tracey Barfield, Roger Garcia, Damon Harris, Joseph McDonnell, Frasier Rowe, Tracey Evans, and Jerry Sams.  (FAC ¶¶ 17, 19-23, 26, 29, 59.)  Plaintiff alleges that Plaintiff informed the Resnicks of these agreements.  (FAC ¶ 25.)  Plaintiff next alleges that Pace, the Resnicks and Berg intentionally disrupted Plaintiff's relations with its independent contractors and expert consultants by soliciting and inducing the independent contractors and expert consultants to terminate or otherwise violate their agreements with Plaintiff. (FAC ¶¶ 27-29, 31, 60, 65.)  Plaintiff finally alleges various types of damage resulting from the alleged interference with Plaintiff's relations with its independent contractors and expert consultants. (FAC ¶¶ 17, 19, 26-27, 29, 62, 67.)  These allegations are sufficient to state a claim against Pace, the Resnicks and Berg for intentional interference with contractual relationships with respect to the thirteen identified independent contractors and expert consultants.

Plaintiff also alleged an agreement with JMA for the supply of various computer hardware, laser equipment, and accessories for use on the BAM project.  (FAC ¶ 18.)  Plaintiff alleged that Pace was aware of Plaintiff's agreement with JMA, as the Resnicks allegedly contacted JMA and stated: Pace would be "pulling the project" from Plaintiff; Plaintiff would then be unable to pay JMA for use of its equipment; and Pace intended to purchase replacement equipment from JMA to complete the project.  (FAC ¶ 30.)  Plaintiff also alleged that JMA responded by repossessing the equipment from Plaintiff.  (FAC ¶ 30.)  These allegations are sufficient to state a claim against Pace and the Resnicks for intentional interference with contractual relationships with respect to Plaintiff's equipment supplier, JMA.

Furthermore, Plaintiff has alleged the existence of a relationship with its "sister company and key supplier in Germany, GiveMePower, GmbH."  (FAC ¶¶ 34, 59, 65.) Plaintiff has alleged that Pace was aware of this relationship, and made the following "false and defamatory statements" to GiveMePower, GmbH: (1) that Plaintiff's president misrepresented that prior to entering the Pace Agreement, that he had successfully managed a similar project for McDonalds; and (2) that Plaintiff failed to adequately staff and train its team of building surveyors prior to deployment on this project.  (FAC ¶¶ 34, 60, 65.)  Plaintiff further alleged that these actions interfered with its contractual relationships with its "software

and equipment suppliers." (FAC ¶¶ 34, 62, 67.) These allegations, viewed in the light most favorable to Plaintiff, are sufficient to state a claim against Pace and the Resnicks for intentional interference with contractual relationships with respect to Plaintiff's supplier, GiveMePower, GmbH.

For the reasons stated above, the motions to dismiss are denied as to: Plaintiff's claim that Pace, the Resnicks and Berg intentionally interfered with contractual relationships with respect to the thirteen above-named independent contractors and expert consultants; and Plaintiff's claim that Pace and the Resnicks intentionally interfered with contractual relationships with respect to JMA and GiveMePower, GmbH.

In addition to naming the specific third parties discussed above, Plaintiff generally alleges "that all Defendants, acting in concert and for the purpose of injuring Plaintiff, have interfered with, and continue to attempt to interfere with, contractual relationships between Plaintiff and its respective key employees, independent contractors, software and equipment suppliers, and customers." (FAC ¶ 60.) However, Plaintiff only states a claim for intentional interference with contractual relationships, as discussed above. For instance, Plaintiff fails to name any customer relationships which were purportedly interfered with. To the extent Plaintiff alleges that any Defendant intentionally interfered with contractual relationships with respect to any third party other than as approved of above, Defendants' motions to dismiss are granted, and the claims are dismissed without prejudice and with leave to amend within 20 days of the date this Order is filed.

**E.    Intentional Interference with Prospective Economic Advantage**

Pace, the Resnicks and Berg move for the dismissal of the claim for intentional interference with prospective economic advantage, arguing that the FAC does not allege a wrongful act other than the interference. (Pace Mot. Dismiss, Doc. # 20, at 7; Berg Mot. Dismiss, Doc. # 24, at 8; Resnicks Mot. Dismiss, Doc. # 25, at 7 n.3.)

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to

induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (citations omitted).  A claim for interference with prospective economic advantage has a more rigorous pleading requirement than a claim for interference with contractual relations because a plaintiff "must show that the defendant's conduct was independently wrongful." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1158 (2003); *see also CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) ("The primary difference between the two torts is that, unlike intentional interference with existing contractual relations, interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself.") (citing *Della Penna*, 11 Cal. 4th at 392-93).  Alleging that defendant acted with improper motive does not establish that the act was wrongful.  *See Korea Supply Co.*, 29 Cal. 4th at 1158.  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.*; *see also Marin Tug & Barge, Inc. v. Westport Petroleum, Inc*., 271 F.3d 825, 835 (9th Cir. 2001).

For the reasons discussed above with respect to Plaintiff's claims that Defendants intentionally interfered with contractual relationships with respect to the third parties specifically named in the FAC (i.e., the thirteen identified independent contractors and expert consultants, JMA and GiveMePower, GmbH), the Court finds that elements (1), (2), (4), and (5) of a claim for intentional interference with prospective economic advantage have been adequately alleged in the FAC.  *Cf. CRST Van Expedited, Inc.*, 479 F.3d at 1108 ("Our analysis in Part III, Intentional Interference with Contract . . ., is applicable to the question of whether CRST properly alleged the elements of interference with prospective economic advantage.").

With respect to the pleading requirement "that the defendant's conduct was independently wrongful," *Korea Supply Co.*, 29 Cal. 4th at 1158, Plaintiff has satisfied this requirement because it has adequately alleged that: (1) the Resnicks' and Pace's interference with Plaintiff's independent contractor agreements with its building surveyors and expert

consultants constitutes a breach of the non-hire and non-compete provisions of the Pace Agreement (FAC ¶¶ 16, 38-43); (2) Berg's intentional interference with Plaintiff's employment contracts with the BAM team constitutes unfair competition (FAC ¶¶ 58-63), as discussed *infra*; (3) the Resnicks' and Pace's interference with Plaintiff's relationship with JMA constitutes a breach of the implied covenant of good faith and fair dealing, as discussed *supra*; (4) the Resnicks' and Pace's interference with Plaintiff's relationship with GiveMePower, GmbH constitutes defamation (FAC ¶¶ 34, 62, 67).

Viewing the allegations in the light most favorable to Plaintiff, these allegations are sufficient to state a claim for intentional interference with prospective economic advantage against Pace, the Resnicks and Berg.  Therefore, the motions to dismiss are denied as to: Plaintiff's claim that Pace, the Resnicks and Berg intentionally interfered with prospective economic advantage with respect to the thirteen above-named independent contractors and expert consultants; and Plaintiff's claim that Pace and the Resnicks intentionally interfered with prospective economic advantage with respect to JMA and GiveMePower, GmbH.

In addition to naming the specific third parties discussed above, Plaintiff generally alleges "that all Defendants wrongfully, unlawfully and intentionally interfered with Plaintiff's current and potential business relationships with its respective key employees, independent contractors, software and equipment suppliers, and customers, and by doing so, with their prospective economic advantage." (FAC ¶ 65.)  However, Plaintiff only states a claim for intentional interference with prospective economic advantage as discussed above.  To the extent Plaintiff alleges that any Defendant intentionally interfered with prospective economic advantage with respect to any third party other than as approved of above, Defendants' motions to dismiss are granted, and the claims are dismissed without prejudice and with leave to amend within 20 days of the date this Order is filed.

### F.     Misappropriation of Trade Secrets

Pace and the Resnicks move for the dismissal of the claim for misappropriation of trade secrets, arguing that the FAC does not properly identify any trade secret.  (Pace Mot. Dismiss, Doc. # 20, at 8; Resnicks Mot. Dismiss, Doc. # 25, at 8.)

To state a claim for misappropriation of trade secrets under the Uniform Trade Secret Act, a plaintiff must allege two elements: (1) the existence of a trade secret; and (2) misappropriation of the trade secret. *See* Cal. Civ. Code § 3426.1(b); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 250 (1968); *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006).  A "trade secret" is defined by California law as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). "[T]he complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Diodes*, 260 Cal. App. 2d at 253; *see also MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F2d. 511, 522 (9th Cir. 1992); *Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 984, 988-992 (S.D. Cal. 1999) (concluding that the *Diodes* discovery provisions apply in federal courts applying California law).  However, "[o]ne who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret to avoid a demurrer to a complaint." *Diodes*, 260 Cal. App. 2d at 252.

Plaintiff alleges it "enjoys a niche market providing customers and business partners in North America with specialized computer aided design and drafting [] software and related computing hardware, sold under Plaintiff's registered trade and brand name PowerCAD®." (FAC ¶ 10.)  Plaintiff also alleges that it created, "a proprietary database of in-house and/or external professionals." (FAC ¶ 11.) Plaintiff describes its "exclusive, proprietary and highly confidential information, and valuable trade secrets" as being composed of "Plaintiff's proprietary database of existing and prospective field technicians and business affiliates, Plaintiff's confidential contractor agreements, as well as confidential business plans and processes developed by Plaintiff for the BAM Project." (FAC ¶ 25.)  Plaintiff alleges it "entered into a Mutual Non-disclosure Agreement, prohibiting either party from disclosing the

1   other's confidential or proprietary information."  (FAC ¶ 12.)  Plaintiff alleges: "Defendants

2   Pace, Terry Resnick, Jody Resnick, and Willis have misappropriated Plaintiff's trade secrets

3   and confidential proprietary information for the benefit of themselves and to gain unfair

4   competitive advantage."  (FAC ¶ 82.)  Finally, Plaintiff alleges, "as a direct and proximate

5   result of Defendant's misappropriation of Plaintiff's trade secrets and confidential and

6   proprietary information, Plaintiff has suffered substantial damages."  (FAC ¶ 83.)

7   　　　Viewing the allegations in the light most favorable to the Plaintiff, the Court finds that

8   Plaintiff has adequately stated a claim for misappropriation of trade secrets against the

9   Resnicks and Pace.  Plaintiff has alleged trade secrets existed: Plaintiff's PowerCAD software

10  and "Plaintiff's proprietary database of existing and prospective field technicians and business

11  affiliates, Plaintiff's confidential contractor agreements, as well as confidential business plans

12  and processes developed by Plaintiff for the BAM Project" (FAC ¶ 25).  The trade secrets

13  derived independent economic value from not being generally known to other people who

14  could obtain economic value from its disclosure or use, and the trade secrets were protected

15  by the Mutual Non-Disclosure agreement which, under the circumstances, is a reasonable step

16  to ensure secrecy.  *See Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1184 (C.D. Cal.

17  2006) ("Defendants allege that the FEX System is the trade secret to be protected.  Further,

18  Defendants allege that the owner attempted to keep it secret by requiring a mutual

19  confidentiality agreement before demonstrating the system.  Requiring other corporations to

20  sign confidentiality agreements is a reasonable step to ensure secrecy.  Thus, Defendants have

21  adequately alleged a trade secret.").  Plaintiff further alleges Pace and the Resnicks

22  misappropriated the trade secrets.  (FAC ¶ 82.)  Therefore, the motions to dismiss the trade

23  secret claims are denied.

24  　　　**G.**　　**Fraudulent Inducement**

25  　　　The Resnicks contend that Plaintiff has failed to allege with particularity the

26  circumstances constituting its claim for fraudulent inducement, as required by Federal Rule of

27  Civil Procedure 9(b).  (Resnicks Mot. Dismiss, Doc. # 25, at 8.)

28  　　　Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting

fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so a defendant can prepare an adequate answer from the allegations. A plaintiff must set forth a specific description of the representations made and explain why they are false and misleading." *Philips Med. Capital, LLC v. Med. Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1044 (N.D. Cal. 2007) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).

Plaintiff alleges that "[o]n or about December 13, 2006, Defendant Pace retained Plaintiff on [the BAM] project." (FAC ¶ 12.) Plaintiff alleges: "In and around December 2006 . . ., Defendants misrepresented to Plaintiff that pursuant to the express terms of the parties' agreements, Plaintiff would be the exclusive provider of the proprietary PowerCAD® software system and related services for the BAM project." (FAC ¶ 86.) Plaintiff further alleges: "In reality, Defendants' intent at the time they signed the agreements . . . was to seize control of Plaintiff's proprietary PowerCAD® software system, business process, and its consultants and other business relationships for its own and sole benefit. . . . Defendants knew their representations were false, and made such representations with the intent to induce Plaintiff to sign the agreements. Defendants' fraudulent inducement is clearly established by the fact that on January 9, 2007, one day after the BAM project deployment, and before Plaintiff had an opportunity to perform under the Pace Agreement, Defendants met at the Holiday Inn Express Hotel in Houston, with the stated purpose of implementing a plan to hijack Plaintiff's proprietary and trade secret information and relationships." (FAC ¶ 87; *see also* FAC ¶ 27.)

Viewing the allegations in the light most favorable to the Plaintiff, the Court finds that Plaintiff has stated a claim for fraudulent inducement against the Resnicks. The FAC alleges with sufficient particularity the circumstances constituting fraud, including: (1) the time was December 2006 through January 2007; (2) the place was Houston, Texas and the location where the Pace Agreement was formed; (3) the persons making the representations were "Defendants," which is defined as including the Resnicks (FAC at 18); (4) the representations made were representations that "Plaintiff would be the exclusive provider of the proprietary

PowerCAD® software system and related services for the BAM project" (FAC ¶ 86); and (5) the statements were fraudulent because they were made "with the stated purpose of implementing a plan to hijack Plaintiff's proprietary and trade secret information and relationships" (FAC ¶ 87). *Cf. Philips Med. Capital, LLC*, 471 F. Supp. 2d at 1044 (denying motion to dismiss fraudulent inducement counterclaim because, "Counter-Claimants have sufficiently alleged the substance of the alleged misrepresentations, who made them, and the approximate time frame as to when they were made"). The Resnicks' motion to dismiss the fraudulent inducement claim is denied.

### H.   Unfair Competition

#### 1.   Motion to Dismiss

Berg moves for the dismissal of Plaintiff's unfair competition cause of action against him, arguing that Plaintiff has failed to state a claim upon which relief can be granted.

To state a claim for unfair competition pursuant to California's Unfair Competition Law ("UCL"), Plaintiff must allege the business act or practice was "unlawful, unfair or fraudulent." *In re Pomona Valley Med. Group Inc*., 476 F.3d 665, 674 (9th Cir. 2007). Unfair competition is not limited to "conduct that is unfair to competitors." *People ex rel. Renne v. Servantes*, 86 Cal. App. 4th 1081, 1095 (2001). "[C]ompetition–as that term is generally understood–is not an element of a claim under the unfair competition statute." *In re Pomona*, 476 F.3d at 675. "Indeed, in defining unfair competition, [Cal. Bus. & Prof. Code] § 17200 refers to only business acts and practices, not competitive business acts or practices, and the term 'embrac[es] *anything* that can properly be called a business practice.'" *Id.* (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular*, 20 Cal. 4th 163, 180 (1999) (emphasis added)). The scope of the UCL is broad, but the remedies are limited. *See Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180. California's UCL provides "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. § 17203.

Plaintiff alleges:

> [O]n January 18, 2007, Willis advised Plaintiff's entire team of Building

Surveyors in Houston not to go to work because the equipment Plaintiff had supplied had been 'confiscated due to Plaintiff's breach of the Agreement with Pace.'   Defendant Jody Resnick then arranged for a telephonic conference between Defendant Ronald Berg and Plaintiff's BAM Project team in Houston. During the call, Defendant Berg introduced himself as the attorney for Pace.  He stated to everyone present that Defendants' wrongful solicitations, as outlined above, were '. . . necessitated by Plaintiff's breach of the Agreement with Pace.' He further falsely advised all members of Plaintiff's team that because Plaintiff intentionally breached the Agreement with Pace by causing the JMA equipment to be repossessed, all Independent Contractor Agreements with Plaintiff were 'null and void,' and of 'no force and effect.'  Moreover, Defendants Berg and Jody Resnick subsequently provided specific advice and 'coaching' to each of the Building Surveyors on how to 'resign' from Plaintiff's employ in phone calls made to Plaintiff on January 19, 2007, in breach of their Independent Contractor Agreements with Plaintiff, and in breach of the Pace Agreement.

(FAC ¶ 31.)  Plaintiff further alleges that "Defendants have engaged in unfair competition in violation of California Bus. & Prof. Code §§ 17200, et seq., by engaging in activities that are unlawful, unfair and fraudulent."  (FAC ¶ 72.)

Given the broad scope of the UCL, Plaintiff has stated an unfair competition claim against Berg.  The allegation that Berg's representations to Plaintiff's BAM team were false is sufficient to allege a "fraudulent" business practice under the UCL.  *See In re Pomona*, 476 F.3d at 674 ("[A]s used in § 17200, 'fraudulent' does not refer to the common law tort of fraud.  Rather, Agarwal need allege only that 'members of the public are likely to be deceived' by ProMed's business act or practice.  Clearly, the public is likely to be deceived by statements that are 'entirely false.'") (quoting *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992)).   Additionally, Plaintiff adequately alleged that Berg violated the UCL because Plaintiff adequately alleged that Berg intentionally interfered with Plaintiff's employment contracts with the BAM team (FAC ¶¶ 58-63).  *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) ("We conclude that CRST adequately alleged that Werner violated the UCL because CRST adequately alleged that Werner engaged in an 'unlawful' business act or practice that allegedly harmed CRST, namely, intentional interference with CRST's employment contracts.") (citation omitted).  As Plaintiff has stated an unfair competition claim against Berg, Plaintiff is entitled to seek injunctive relief against Berg.  *See* Cal. Bus. & Prof. § 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.").

Therefore, Berg's motion to dismiss the claim for unfair competition and the related claim for injunctive relief is denied.

### 2.    Motions to Strike

Pace and the Resnicks move to strike, pursuant to Federal Rule of Civil Procedure 12(f), Plaintiff's cause of action for unfair competition on the grounds that Plaintiff seeks remedies that are unavailable as a matter of law under the UCL.[3]  (Pace Mot. Dismiss, Doc. # 20, at 9-10; Resnicks Mot. Dismiss, Doc. # 25, at 10 (incorporating by reference all arguments in Pace's Motion to Strike).)

Under Rule 12(f), a party may move a court to "order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike under "Rule 12(f) 'is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.'"  *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) (Hufstedler, J., concurring and dissenting) (quoting 5 Wright & Miller, Federal Prac. & Proc. § 1380, at 782).  Motions to strike are generally regarded with disfavor and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citation omitted).  "Even when the defense under attack presents a purely legal question, courts are reluctant to determine disputed or substantial questions of law on a motion to strike."  *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995).  Ultimately, whether to grant a motion to strike lies within the discretion of the district court.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993).  In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party.  *See In re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal 2000).

The remedies available under the UCL are limited to injunction and restitution.

---

[3]  Berg also purports to join in Pace's Motion to Strike the unfair competition claim because Plaintiff seeks remedies that are unavailable under the UCL.  However, Plaintiff has stated that it "elects to pursue only injunctive relief against Berg for his [alleged] violation of the UCL."  (Pl.'s Opp'n Berg Mot. Dismiss, Doc. # 36, at 7.)  As Defendants concede, § 17203 of the UCL expressly allows a private party to seek injunctive relief.  (Pace Mot. Dismiss, Doc. # 20, at 10.)  Therefore, Berg's Motion to Strike the unfair competition claim is denied.

*Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 179 (1999). Restitution compels a UCL defendant to "return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1149 (2003) (citation omitted). Restitution is not always limited to returning money or property that was once in the possession of Plaintiff; it may also include awarding money or property to Plaintiff in which Plaintiff has a vested interest. *See Korea Supply*, 29 Cal.4th at 1149 (citation omitted). However, restitution under the UCL does not allow disgorging profits from Defendant. *See In re First Alliance Mortgage Co.*, 471 F.3d 977, 997 (9th Cir. 2006); *see also Madrid v. Perot Sys. Corp*., 130 Cal. App. 4th 440, 453 (2005). Plaintiff may not recover for mere expectancy or lost business opportunity. *See U.S. v. Rodrigues*, 229 F.3d 842 (9th Cir. 2000); *Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1082 (C.D. Cal. 2003).

In the FAC, Plaintiff seeks the following remedies under the UCL: "Plaintiff is entitled to lost profits suffered as a result of Defendants' conduct in an amount to be determined at trial, and the costs and its fees in prosecuting this action. Defendants should forfeit any and all compensation or economic benefit of any type they have obtained as a result of their activities with Plaintiff, and should forfeit income and profits derived as a result of their disruption of Plaintiff's contractual relations." (FAC ¶ 74).

Pace and the Resnicks characterize these remedies as disgorgement, and contend disgorgement is a broader remedy than what is allowed under the UCL. (Pace Mot. Dismiss, Doc. # 20, at 11.) Pace and the Resnicks assert that, "[a]t best, [Plaintiff] is entitled to a return of the confidential information that Pace allegedly took from [Plaintiff]; it is simply not entitled to all profits Pace allegedly earned through the use of the same." (Pace Reply, Doc. # 34, at 8).

Plaintiff responds by arguing that "the recovery requested can be traced to particular property in Pace's possession and therefore is the proper subject of a constructive trust." (Pl.'s Opp'n, Doc. # 29, at 9.) The recovery Plaintiff seeks through the constructive trust is the

"recovery of the compensation and economic benefit that Pace obtained as a result of converting [Plaintiff]'s confidential and proprietary information." (Pl.'s Opp'n, Doc. # 29, at 9.)

Pursuant to the UCL, a plaintiff may recover money or property it has a vested interest in when the court creates a constructive trust over an "identifiable kind of property or entitlement in defendant's hands." *Korea Supply*, 29 Cal. 4th at 1150. "[A] constructive trust requires 'money or property identified as belonging in good conscience to the plaintiff [which can] clearly be traced to particular funds or property in the defendant's possession.'" *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, (2002)).

Viewing the allegations in the light most favorable to Plaintiff, Pace and the Resnicks have failed to show that Plaintiff will be unable to trace "money or property identified as belonging in good conscience to the plaintiff which can clearly be traced to particular funds or property in the defendant's possession." *Id.*; *cf. Rosales v. Citybank*, 133 F. Supp. 2d 1177, 1180-81 (N.D. Cal. 2001) (denying a motion to strike a UCL cause of action because "where a measurable amount has been taken from a person in the course of an unfair business practice, that loss can be restored to the victim"). Moreover, Pace and the Resnicks have failed to cite to any case striking a UCL cause of action pursuant to Rule 12(f), and have failed to show that a motion to strike pursuant to Rule 12(f) is an appropriate vehicle for dismissing a UCL cause of action on the grounds that the remedies sought are unavailable. *Cf. Madison House, Ltd. v. Sotheby's Int'l Realty Affiliates, Inc.*, 2006 WL 3097417, at *2 (W.D. Wash., Oct. 30, 2006) ("Defendants attempt to characterize the challenged claims as 'immaterial,' in keeping with the language of FRCP 12(f). But what Defendants really mean when they use that term in this context is 'legally insufficient,' which is not the same. . . . Defendants' request is more properly raised under FRCP 12(b)(6) as a motion to dismiss or under FRCP 56 as a motion for summary judgment. When the motion is properly denominated and the argument framed accordingly, Plaintiffs will have an opportunity to more appropriately respond to what Defendants are seeking.").

The motions to strike the unfair competition claim filed by Pace and the Resnicks are

denied.

**III.    Conclusion**

The motions to dismiss are granted in part and denied in part, as set forth above.  The motions to strike are denied.  (Docs. # 20, 23, 25.)

DATED:  August 14, 2007

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

07cv157